ORDERED PUBLISHED

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: | ) BAP No.  CC-13-1137-PaKuBa |
| JORDAN WANK, | ) Bk. No.  SV 12-11628-MT |
| Debtor. | ) Adv. No. SV 12-01156-MT |
| | ) |
| JORDAN WANK; BRUCE WANK, | ) |
| Appellants, | ) |
| v. | ) **O P I N I O N** |
| DANIEL GORDON; BASIL SIMONA; A&S INVESTMENT, LLC; ATHAR SIDDIQI; MARK FERGUSON; GEORGE TSOUPAKIS, | ) |
| Appellees. | ) |

Argued and Submitted on November 21, 2013
at Pasadena, California

Filed - January 29, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Hon. Maureen Tighe, U.S. Bankruptcy Judge, Presiding

Appearances:     Lincoln Browning Quintana argued for appellants Jordan Wank and Bruce Wank.  David Paul Bleistein argued for appellees Daniel Gordon, Basil Simona, A&S Investment, LLC, Athar Siddiqi, Mark Ferguson and George Tsoupakis.

Before: PAPPAS, KURTZ and BALLINGER[1], Bankruptcy Judges.

---

[1]  The Honorable Eddward Ballinger, Jr., United States Bankruptcy Judge for the District of Arizona, sitting by designation.

PAPPAS, Bankruptcy Judge:

Chapter 7[2] debtor Jordan Wank ("Wank")[3] appeals the summary judgment of the bankruptcy court determining that a portion of a judgment debt owed by Wank to appellees Daniel Gordon, Basil Simona, A&S Investment, LLC, Athar Siddiq, Mark Ferguson and George Tsoupakis (together, "the Appellees") is excepted from discharge under § 523(a)(2)(A). We VACATE the summary judgment and REMAND this matter to the bankruptcy court for further proceedings.

## FACTS[4]

Wank is a California attorney who filed a chapter 7 bankruptcy petition. The Appellees are creditors who assert that their claim against Wank should be excepted from discharge under various provisions of § 523(a). They assert that Wank induced each of them to invest in a fraudulent currency speculation scheme

[2] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. Civil Rule references are to the Federal Rules of Civil Procedure 1-86.

[3] Bruce Wank, who is apparently a creditor in the bankruptcy case and son of the debtor Jordan Wank, joined in the notice of appeal, and appears in the caption of the parties' briefs. However, it is not clear in the record what his interest in this litigation and the appeal may be. As near as we can tell, he was not a plaintiff or defendant in the adversary proceeding in the bankruptcy court. Therefore, in this decision we refer only to the principal appellant, the debtor Wank.

[4] This dispute ultimately concerns two declarations executed by Wank, one signed in 2009 in connection with state court proceedings, and a second, later declaration filed in this litigation in 2013 in which Wank either repudiates the earlier factual assertions, or attempts to explain them in context. We discuss here only those facts we believe to be uncontroverted by either party.

known as the European Investment Structure ("EIS").[5] Basil Simona resides in Michigan and is the managing member of A&S Investments, LLC, an entity that invested $125,000. Althar Siddiqui resides in Michigan and invested $400,000. Mark Ferguson resides in Los Angeles and invested $150,000. George Tsoupokis and Daniel Gordon reside in Colorado, and they invested $100,000 and $50,000 respectively.

Jerry Neidich ("Neidich") is a friend and neighbor of Wank. Neidich, along with Daniele Romer ("Romer"), solicited the Appellees to invest in EIS. There is no evidence in the record, nor any contention by the Appellees, that Wank knew, or communicated with, any of the Appellees before the first contact was made with them regarding the investments. Wank concedes, however, that he received funds by wire transfer from each of the Appellees, and that he in turn transmitted all $825,000 of the money they sent him, plus $25,000 of his own funds, to UNIFICO Holdings, LLC, and its principal, Kurshid Shah ("Shah"), in care of a bank account in London, United Kingdom, to invest that money in currency speculation. Wank entered into written contracts (the "EIS Agreements") with each of the Appellees regarding the investments, although these contracts have not been included in either the appellate record or the docket of the bankruptcy court adversary proceeding. The parties agree that there is no evidence that UNIFICO Holdings, LLC, or Shah made any trade with the funds; they also agree that the Appellees and Wank never received the

[5] EIS is the descriptive name for the investment scheme; it does not appear to be a formal organization or entity. Wank alleges, and Appellees do not dispute, that he sent all of the funds he received from Appellees to the bank account of UNIFICO Holdings, LLC, in London, United Kingdom, to be invested in EIS.

-3-

anticipated profits from their investment nor, indeed, any return of their invested funds.

Having lost their investments, in May 2007 the Appellees sued Wank, Neidich, Romer, Shah, EIS, UNIFICO Holdings, LLC, and UNIFICO Trading, Ltd. (apparently a d/b/a of UNIFICO Holdings, LLC) in Los Angeles Superior Court. Gordon v. Wank, case no. BC 371 999 (the "State Court Action"). A First Amended Complaint, filed on September 11, 2009, in the State Court Action, contained twenty causes of action, including false promise, fraud and conspiracy to defraud, against all defendants.

On December 28, 2009, Wank, Neidich and Romer entered into a settlement agreement and stipulated judgment with the Appellees (collectively, the "Settlement Agreement") concerning the state court action. Under the terms of the Settlement Agreement, Neidich, Romer and the Appellees mutually released each other from all claims on condition that Wank pay the Appellees the total sum of $750,000. If Wank failed to pay the Appellees by March 15, 2010, he stipulated that a judgment could be entered against him by the state court for the full amount of the Appellees' claim of $1,100,000. Of critical interest in this appeal, however, was the following provision in the Settlement Agreement:

> THIS JUDGMENT SHALL BE EXEMPT FROM DISCHARGE IN BANKRUPTCY
>
> The Parties agree that the obligations arising from this Settlement Agreement shall be non-dischargeable under the provisions of the Bankruptcy Code. Mr. Wank has also executed his attached Declaration in Support of the factual basis of why his obligation under this Agreement should not be discharged in Bankruptcy (Exhibit E).

As part of the settlement, the Appellees required Wank to sign a declaration under penalty of perjury on December 30, 2009,

-4-

a copy of which was attached to the Settlement Agreement (the "First Declaration"). It included the following statements:

The purpose of this Declaration is to provide a factual basis to further the intention of the Plaintiffs and Defendants in this litigation to ensure that if I do not pay any or all of the Judgment on a timely basis and declare bankruptcy that the amounts due Plaintiffs for their investment in the [EIS], plus interest, of $1,100,000 shall not be discharged in bankruptcy. First Declaration at ¶ 1.

In later Summer and Fall of 2004, I entered into written agreements with [the Appellees] in which I agreed to act as a "primary investor" to invest their moneys that I received from each of them in the [EIS] which was operated by Mr. Kurshid Shah. Id. at ¶ 2.

I advised each of the [Appellees] (and set forth in the EIS Agreements) that before any trade was made, the trading group in England would have an "exit buyer" in place, with a built in profit for each transaction, and that the profits from each trade would be deposited into the account for distribution on a monthly basis. In fact, there was no such "exit buyer" and, as mentioned, all of the [Appellees] and others who invested lost their entire investments. Id. at ¶ 3(e).

I communicated to the [Appellees] that they could expect monthly returns of 30 to 50 percent. Id. at ¶ 3(f).

I made representations to the [Appellees], which were false, to induce them to place their funds in my trust account, and to permit me to act as their "primary investor," and to permit me to transfer [Appellees'] funds to EIS. Id. at ¶ 4.

I communicated to the [Appellees] that investing in the [EIS] would be a safe investment, and that I was an attorney with expertise in such matters. Under the terms of the EIS Agreements, the [Appellees'] funds were to be returned to the [Appellees] in 45 days if no foreign currency trades were executed. However, I knew at the time I executed the contracts and accepted the wire transfers for the [Appellees'] funds that there was a possibility that the funds could be lost. I did not so inform the [Appellees]. Id. at ¶ 5.

By entering into the EIS Agreements with the Plaintiffs, I did not comply with the following [California Rules of Professional Conduct]: (a) [Rule] 3-110 by failing to act competently; (b) Rule 3-500, keeping clients informed of a situation in which I was acting for them; and (c) Rule 4-100 failing to preserve identity of client funds. Id. at ¶ 14.

-5-

The Settlement Agreement provided that the signed, original First Declaration would be kept in a sealed envelope by an escrow agent. If Wank failed to make the $750,000 payment as provided in the Settlement Agreement, and later filed for bankruptcy protection, the Settlement Agreement provided that the First Declaration would be unsealed and submitted to the bankruptcy court. The parties also executed a Stipulation to Judgment providing that, if Wank failed to pay the required $750,000 by March 15, 2010, the state court would be requested to enter judgment in the amount of the full claim of $1,100,00.

Wank did not pay the required $750,000 by the March 15, 2010 deadline and, at the Appellees' request, the state court, on June 18, 2010, entered the stipulated judgment against Wank and in favor of the Appellees in the total amount of $1,100,000.

Wank filed a chapter 7 bankruptcy petition on February 20, 2012. On Schedule F, Wank listed a noncontingent, liquidated, undisputed unsecured nonpriority claim of $1,250,000 for the five Appellees.

On May 5, 2012, Appellees filed an adversary complaint against Wank and his former spouse, Toby Wank, in the bankruptcy court.[6] Thereafter, the complaint was amended, seeking a declaration by the bankruptcy court that the $1,100,000 judgment debt owed to the Appellees by Wank was excepted from discharge under §§ 523(a)(2), (4), (6) and (19).[7] The Appellees' first

---

[6] Although Toby Wank was named as a co-defendant in the complaint initiating this adversary proceeding, the requested relief was only directed against Wank.

[7] We need not, and do not, discuss the parties' arguments regarding the Appellees' claims for an exception to discharge
(continued...)

-6-

claim, the one at issue in this appeal, sought an exception to discharge for fraud under § 523(a)(2)(A), and alleged that (1) Wank "stole" $825,000 from Appellees and did so "deliberately and stipulated as much in the Settlement Agreement," (2) Wank lied to the Appellees when asked about the "stolen funds," (3) Wank lied to the Appellees when he sent their invested funds to EIS, and (4) Wank stipulated that he committed fraud against the Appellees in the First Declaration and Settlement Agreement.

Although Wank's answer to the Appellees' amended complaint contained a general denial of the allegations, he admitted the paragraph which quoted the text of the First Declaration noted above, and the paragraph acknowledging that he signed the First Declaration under penalty of perjury.

During the pendency of the litigation, Appellees filed a Motion for Summary Judgment on December 31, 2012. After discussing the general requirements for an exception to discharge under § 523(a)(2)(A), the motion summarized the Appellees' argument in a single paragraph:

> Here, the admissions of Mr. Wank in his prejudgment declaration meet these standards. He admitted that the EIS was a fraud. He admitted that the [Appellees] lost all of the $825,000 they invested in the EIS. Mr. Wank admitted to making false statements to induce the [Appellees] to invest in the EIS.

Notably, the Appellees did not argue that Wank knew at the time of making any representations to them that they were false, nor that the Appellees justifiably relied on those representations.

---

[7](...continued)
under § 523(a)(4), (6) and (19) because the bankruptcy court's summary judgment on appeal was based solely on § 523(a)(2)(A), and the Appellees did not cross-appeal the court's judgment.

-7-

Wank opposed the summary judgment motion, stating that the the First Declaration, and the statements he made in it, were inherently unreliable and inadmissible as evidence in the adversary proceeding because the First Declaration was intended to defeat his right to obtain the protections of a discharge in bankruptcy. Further, Wank pointed out, the Appellees failed to either argue or provide any evidence that they justifiably relied on any alleged misrepresentations of Wank to their detriment, and thus they failed to establish an essential element of exception to discharge under § 523(a)(2)(A).

Attached to Wank's opposition to the summary judgment motion was the Declaration of Jordan Wank (the "Second Declaration"). In the Second Declaration, in addition to explaining his position and certain arguments in the opposition, Wank addressed the circumstances giving rise to his execution of the First Declaration. Wank insisted that he had signed the First Declaration under duress and while he was under the influence of anxiety medication. Wank alleged that he had objected to the Appellees' counsel at the time he executed the First Declaration that some of its content was "false and untrue." While Wank acknowledged that he made false statements to the Appellees that he knew to be untrue, he noted that his sole incentive in signing the First Declaration was because "[the Appellees'] counsel agreed to a settlement satisfaction in the amount of $750,000, a large discount from the damages alleged in the suit, and the settlement allowed me negotiated terms and time to pay." He also stated that he believed that his statements in the First Declaration could not

be enforced against him.[8]

In the Second Declaration, Wank also specifically addressed several of the statements he made in the First Declaration. As noted above, the First Declaration provided:

> In later Summer and Fall of 2004, I entered into written agreements with [Appellees] in which I agreed to act as a 'primary investor' to invest their moneys that I received from each of them in the [EIS] which was operated by Mr. Kurshid Shah.

First Declaration at ¶ 2. In the Second Declaration, Wank confirms this statement is true, but explains it:

> I advised each of the [Appellees] (and set forth in the EIS Agreements) that before any trade was made, the trading group in England would have an "exit buyer" in place, with a built in profit for each transaction, and that the profits from each trade would be deposited into the account for distribution on a monthly basis. In fact, there was no such "exit buyer" and, as mentioned, all of the [Appellees] and others who invested lost their entire investments.

Second Declaration at ¶ 3(e).

In the Second Declaration, Wank also charged that the Appellees had "paraphrased" the EIS Agreements in the First Declaration to suggest that he had made representations to Appellees that he had not:

> Specifically, the [First Declaration] says: "I advised each of the Plaintiffs that . . ." However, the EIS Agreements presented to each Appellee state, "The trading group has advised us that . . . ." The last sentence is sheer speculation and conjecture as no one, including the Plaintiffs or me had any knowledge of the existence or non-existence of any such "exit buyer."

As to the representations in paragraphs 4 and 5 of the First Declaration, quoted above, Wank repudiated them, labeling them

---

[8] In particular, Wank averred in the Second Declaration that "I believed the [First Declaration] was illegal and unenforceable in any case as Plaintiffs' counsel and I both knew the content of the declaration was false." Second Declaration at ¶ 13.

-9-

"false and untrue."

In response to Wank's contention that some of the statements he made in the First Declaration were false and untrue, the Appellees simply noted that he made those statements under penalty of perjury. However, the Appellees did not address Wank's argument that they had not submitted evidence to satisfy the justifiable reliance prong for an exception to discharge under § 523(a)(2)(A). Before the hearing on the summary judgment motion, the bankruptcy court issued a Tentative Ruling, stating, in part, that:

> In the Settlement Agreement, Debtor admits that he agreed to act as a primary investor to invest Plaintiff's monies, that the funds were wired to Defendant's trust account to be wired to EIS, that the EIS was a fraud, that Defendant advised Plaintiffs that EIS would have an exit buyer in place, but that there was no such exit buyer, that he made representations to Plaintiffs that were false to induce them to place their funds into his trust account and to permit him to act as Plaintiff's primary investor. These stipulated facts are probative and credible evidence of fraud and conversion. Defendant maintains that he signed the Settlement Declaration under duress and undue influence because it was required for purposes of resolution of the State Court Action on the eve of trial wherein Defendant had no legal representation other than himself. Defendant then admits, however, that he believed the document was illegal and unenforceable. He also believed that he would be able to obtain a personal loan to pay the stipulated judgment amount so the Settlement Declaration would never be unsealed.
>
> Defendant's reasons for admitting the key facts of the fraud do nothing to deny the admissions previously made. They are excuses that do not suffice to raise any doubt as to the admissions previously made. Thus, plaintiffs have demonstrated that there is no disputed material fact as to the elements of the dischargeability actions.

The bankruptcy court made no comment in the Tentative Ruling regarding whether the Appellees had justifiably relied on Wank's statements.

-10-

After hearing and considering the summary judgment motion, the bankruptcy court stated that it would not consider the Appellees' arguments for an exception to discharge under either §§ 523(a)(6) or (19) because the court had not been given sufficient facts to make a ruling concerning those claims. Hr'g Tr. 20:8-21, February 20, 2013.[9] Additionally, the court noted that, in making its decisions, it had disregarded the "bankruptcy defeating" clauses in the Settlement Agreement and the First Declaration, and had only considered the factual admissions made by Wank in the First Declaration. Hr'g Tr. 19: 4-9. However, even without considering the bankruptcy defeating provisions, the court determined that Wank's admissions in the First Declaration were sufficient to establish an exception to discharge under § 523(a)(2)(A), and that his explanations and repudiations of those admissions in the Second Declaration did not negate those admissions:

> The statements [in the Second Declaration] do not dispute the key statements made [in the First Declaration]. They simply try to explain them away or justify them or rationalize them. But the statements that go to the fact that false representations were made, they were made, according to paragraph 4, to induce the Plaintiffs to place funds in Mr. Wank's account, and that there were communications made, and that there was an intent for them to rely on those statements because they were made to induce them and the fact that there was fraud really ha[s] not been disputed with a careful reading of the [Second Declaration].

Hr'g Tr. 19:19-20:4.

The bankruptcy court granted the Appellees' motion, and on March 13, 2013, the court entered a summary judgment determining

---

[9] It is not clear what disposition was made by the bankruptcy court as to the Appellees' § 523(a)(4) claim. Neither the court's Tentative Ruling, nor the order or judgment, refer to that claim.

-11-

that $825,000[10] of the debt owed by Wank to the Appellees was excepted from discharge under § 523(a)(2)(A). Wank filed a timely appeal on March 22, 2013.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in granting a summary judgment determining that Wank's debt to the Appellees was excepted from discharge under § 523(a)(2)(A).

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's grant of summary judgment. SNTL Corp. v. Ctr. Ins. Co. (In re SNTL Corp.), 571 F.3d 826, 834 (9th Cir. 2009). We also review de novo whether a debt is excepted from discharge under § 523(a)(2)(A). Tsurukawa v. Nikon Precision, Inc. (In re Tsurukawa), 258 B.R. 192, 195 (9th Cir. BAP 2001).

## DISCUSSION

Summary judgment may be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Civil Rule 56(a), incorporated by Rule 7056; Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 707 (9th Cir. 2008). The trial court may not weigh evidence in resolving such motions, but rather determines only whether a material factual dispute remains for

[10] Although requested to do so by the Appellees, the bankruptcy court declined to declare the entire amount due under the state court stipulated judgment was excepted from discharge, limiting its ruling to the actual amounts invested by the Appellees. The Appellees did not cross-appeal any aspect of the court's judgment.

-12-

trial. Covey v. Hollydale Mobilehome Estates, 116 F.3d 830, 834 (9th Cir. 1997). A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party, and a fact is "material" if it might affect the outcome of the case. Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 992 (9th Cir. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986)). The initial burden of showing there is no genuine issue of material fact rests on the moving party. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998).

Under § 523(a)(2)(A), a debt for money obtained by the debtor under "false pretenses, a false representation, or actual fraud" may be excepted from discharge. The Ninth Circuit has held that summary judgment is proper in considering an exception to discharge under § 523(a)(2)(A) if the proponent is able to show that there is no genuine issue of material fact as to each of the five elements of exception to discharge under that provision: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. Turtle Rock Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000).

Based upon our de novo review of the record, we conclude that the Appellees have not shown that there are no genuine issues of material fact such that they are entitled to an exception to discharge under § 523(a)(2)(A) as a matter of law. Before examining the deficiencies in the Appellees' attempt to establish

-13-

the elements required for a fraud exception to discharge, we first address Wank's argument that the bankruptcy court erred in granting the summary judgment based solely[11] on the First Declaration for reasons of public policy.

**I.**

**The bankruptcy court should not have relied so on Wank's statements made in the First Declaration as the sole basis for granting summary judgment to the Appellees.**

In Bank of China v. Huang (In re Huang), 275 F.3d 1173 (9th Cir. 2002), in a detailed prepetition settlement agreement, the debtor agreed he would not file for bankruptcy protection, and that, if he did, the debt in favor of the bank evidenced by the settlement agreement would not be dischargeable. Id. at 1176-77. In refusing to enforce the terms of the agreement when the debtor nonetheless sought bankruptcy protection, the Ninth Circuit held that "it is against public policy for a debtor to waive the prepetition protection of the Bankruptcy Code." Id. at 1177 (quoting Hayhoe v. Cole (In re Cole), 226 B.R. 647, 651-54 (9th Cir. BAP 1998)). As the Ninth Circuit explained: "This prohibition of prepetition waiver has to be the law; otherwise, astute creditors would routinely require their debtors to waive." Id.

This Panel's opinion in In re Cole, cited in In re Huang,

---

[11] The bankruptcy court made it clear that it was ruling solely on the basis of the First Declaration. In its Tentative Ruling, it stated, "The Stipulated Facts within the [First] Declaration are probative evidence of nondischargeability under §§ 523(a)(2) and (a)(6) for fraud and conversion." Tentative Ruling at 5, February 20, 2013. At the hearing on February 20, 2013, the court observed, "I've just looked at the material disputed facts. And the material disputed facts in this [First Declaration] are sufficient to prove up a [§] 523(a)(2) fraud nondischargeability judgment for $825,000." Hr'g Tr. 19:14-17.

-14-

provides further explanation of the reasons for this policy:

> First, pursuant to § 523(c), bankruptcy courts have exclusive jurisdiction to determine the dischargeability of claims arising under § 523(a)(2). See Seven Elves, Inc. v. Eskenazi (In re Eskenazi), 6 B.R. 366, 368-69 (9th Cir. BAP 1980) [citing Brown v. Felsen, 442 U.S. 127, 138 (1979)]. . . .   Second, there is no recognized exception to discharge for prepetition waivers of discharge or dischargeability.  Section 727(b) states that all debts are dischargeable in bankruptcy unless specifically excepted under § 523.  Section 523 enumerates the exceptions to discharge, but does not except from discharge those debts that the debtor has agreed prepetition not to be discharged in bankruptcy (citations omitted).  If bankruptcy courts enforced prepetition waivers of discharge, they would effectively be creating an exception to discharge that Congress had not enumerated (citations omitted). . . .   Finally, an exception to discharge impairs the debtor's fresh start and should not be read more broadly than necessary to effectuate policy[.] (citations omitted).

In re Cole, 226 B.R. at 653-54.

In re Huang and In re Cole continue to be good law. Continental Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 671 F.3d 1011, 1026 (9th Cir. 2012) (in reaffirming its holding in In re Huang, and again citing with approval to In re Cole, the Ninth Circuit observes "it is against public policy for a debtor to waive the prepetition protection of the bankruptcy code.").  Bankruptcy courts in this circuit have acknowledged the prohibition against prepetition waivers of bankruptcy discharge rights announced in In re Huang and In re Cole.  In re Ashworth, 2012 WL 4596217, at *15 (Bankr. C.D. Cal. Oct. 1, 2012) (citing In re Cole for the proposition that "prepetition waivers of a discharge are contrary to public policy and unenforceable");  In re Jennings, 306 B.R. 672, 675 (Bankr. D. Or. 2004) ("As a matter of public policy, an agreement in advance of a bankruptcy case that a particular claim is not subject to

-15-

discharge is not enforceable."). And courts in other circuits have also declined to enforce prepetition discharge waivers. Lichtenstein v. Barbanel (In re Lichtenstein), 161 Fed. Appx. 461, 467-68 (6th Cir. 2005) (agreeing with In re Cole, the Sixth Circuit held that "waiving a debtor's right to obtain a discharge of a specific debt in a future bankruptcy case is void because it offends the public policy of promoting a fresh start for individual debtors")[12]; Klingman v. Levinson, 831 F.2d 1292, 1296 n.3 (7th Cir. 1987) ("For public policy reasons, a debtor may not contract away the right to a discharge in bankruptcy."); First Ga. Bank v. Halpern (In re Halpern), 50 B.R. 260, 262 (Bankr. N.D. Ga. 1985), aff'd, 810 F.2d 1061 (11th Cir. 1987) ("Policy considerations dictate that dischargeability questions cannot be predetermined either by a state court or by agreement of the parties prior to or in anticipation of the possible filing of a bankruptcy case."). Hillmeyer v. Deller (In re Deller), 2009 Bankr. Lexis 5556, at *24 (Bankr. W.D. Pa. 2009) (citing both In re Huang and In re Cole for their holding that "A prepetition waiver of the dischargeable debt is contrary to public policy.").

The prohibition on prepetition waivers of discharge for public policy reasons predates the Bankruptcy Code. Fallick v. Kehr, 369 F.2d 899, 904 (2d Cir. 1966) ([A]n advance agreement to waive the benefits of the [Bankruptcy] Act would be void."); In re Weitzen, 3 F. Supp. 698 (S.D.N.Y. 1933) (same). One bankruptcy court recently explained the basis for this policy:

_____

[12] 6th Cir. R. 28(g), in effect at the time of the Lichtenstein opinion, permitted citation to unpublished opinions as persuasive authority.

-16-

Congress . . . provided in the Bankruptcy Code just two methods through which a debtor could effectuate a waiver on matters concerning discharge. First, § 727(a)(10) permits debtors to waive their discharge entirely by executing a postpetition written agreement and having that agreement approved by the bankruptcy court. Second, after the commencement of the bankruptcy case, a debtor may waive the dischargeability of a particular debt by complying with the requirements for reaffirmation agreements as set forth in § 524(c). In either case, however, a debtor is under the protection of the bankruptcy court, an important commonality which is lacking when a debtor executes a prepetition waiver of their discharge.

Double v. Cole (In re Cole), 428 B.R. 747, 753 (Bankr. N.D. Ohio 2009).

In light of the strong public policy declining to enforce prebankruptcy discharge waivers, Wank contends that the bankruptcy court erred when it elected to ignore the bankruptcy-defeating clause in the Settlement Agreement, but then considered his apparent admissions in the First Declaration as evidence that he committed fraud, and as the sole basis for granting summary judgment in favor of the Appellees. In response, the Appellees argue that while agreements that a debt will not be dischargeable in bankruptcy are unenforceable, parties are free to stipulate to the facts giving rise a debt, which facts can then be considered by the bankruptcy court in a later dischargeability action. In this position, the Appellees quoted a passage from this Panel's decision in In re Cole:

We have already concluded that the portion of the Stipulated Judgment that purported to waive Appellee's right to obtain a discharge of the Debt was unenforceable as against public policy. However, if the parties stipulated to the underlying facts that support a finding of nondischargeability, the Stipulated Judgment would then be entitled to collateral estoppel application.

-17-

226 B.R. at 653.[13]

While we do not here attempt to address all possible scenarios, we agree with Wank that, given the circumstances surrounding his execution of the First Declaration in this case, and when viewed in light of the strong public policy prohibiting debtors from contracting with creditors to forego the protections of a bankruptcy filing, Wank's statements in the First Declaration must, at a minimum, be viewed with great skepticism. As a result, and considering the other facts in the record, we believe it was inappropriate for the bankruptcy court to grant a summary judgment to the Appellees based solely on Wank's statements made in the First Declaration.

There can be no doubt about the purpose for the First Declaration; it was drafted by the Appellees' counsel with a singular goal in mind.[14] The First Declaration not intended to evidence that Wank was indebted to the Appellees – that goal was effectively accomplished by the terms of the Settlement Agreement. The First Declaration was also not designed to be effective for use by the Appellees in state court.[15] Instead, the introductory

---

[13] Of course, unlike in In re Cole, Wank's admissions in the First Declaration were not "stipulated," nor were they referenced in the state court's stipulated judgment. Instead, as discussed below, the First Declaration was a standalone document, executed only by Wank, not submitted for consideration by the state court, and then sealed, to be used by the Appellees only in a bankruptcy proceeding.

[14] Counsel for the Appellees, at oral argument, confirmed that his law firm drafted the First Declaration.

[15] In the Second Declaration, Wank states, and the Appellees have not sought to dispute, that: "In approximately May or June 2010, the Superior Court held hearings to enter the stipulated judgment. Plaintiffs' counsel had attempted to introduce the
(continued...)

-18-

paragraph of the First Declaration reveals the true intention of the drafters regarding Wank's statements:

> The purpose of this Declaration is to provide a factual basis to further the intention of the Plaintiffs and Defendants in this litigation to ensure that if I do not pay any or all of the Judgment on a timely basis and declare bankruptcy that the amounts due Plaintiffs for their investment in the [EIS], plus interest, of $1,100,000 shall not be discharged in bankruptcy.

First Declaration at ¶ 1.

Given the reasons for Wank's execution of the First Declaration, we think the reliability of the factual statements that follow are potentially tainted by the Appellees' motives. The document was solely intended to ensure that Wank could not obtain effective relief in bankruptcy.[16] While, perhaps, some of Wank's factual statements could be trusted, to do so would require the bankruptcy court to weigh the credibility of those statements against the circumstances under which the First Declaration was executed. And while the bankruptcy court could properly evaluate the First Declaration in the context of a trial, it is a far different matter for the court to rely exclusively on Wank's "admissions" in the First Declaration as the sole basis for granting Appellees a summary judgment that Wank committed fraud.

---

[15](...continued)
[First Declaration]. In personal, in-court testimony to Judge Rosenfield of the Superior Court and with Plaintiffs' counsel present, I specifically recanted the truth of the contents of the [First Declaration] and objected to its use. Plaintiffs' counsel then withdrew the document." Second Declaration at ¶ 20.

[16] Of course, the First Declaration was intended to support an exception to discharge of only the Appellees' debt. But even without knowing the details of Wank's other debts, it is doubtful that, if he emerged from bankruptcy burdened by the Appellees' $825,000 judgment, Wank would enjoy much of a "fresh start" via his discharge of other debts.

-19-

In our view, to grant a summary judgment in this fashion, and without a trial, undermines the Ninth Circuit's concern about giving effect to agreements motivated by a creditor's desire to insulate debts from discharge in bankruptcy, and encourages the sort of routine inclusion of such factual statements in settlement agreements the court was attempting to discourage.[17]

Besides the bankruptcy-defeating clauses, there are other red flags suggesting that Wank's statements in the First Declaration were untrustworthy. Wank stated later, in the Second Declaration, and without contradiction by the Appellees, that he executed the First Declaration because he felt compelled to do so, at a time when he was taking prescription medications, and because he did not believe he could physically withstand the rigors of a trial. Wank, a lawyer, also stated that he believed his factual statements in the First Declaration would be unenforceable against him. While the bankruptcy court was understandably reluctant to allow Wank to create fact issues by arguing with himself, Wank's later observations, considered in context with the other circumstances surrounding his execution of the First Declaration, were entitled to some consideration, and should have given the

---

[17] There is evidence in the First Declaration that there may have been another, ulterior motive for the document. As noted above, in it, Wank concedes that, in his dealings with the Appellees, he failed to abide by several provisions of the California Rules of Professional Conduct. If Wank's statements are indeed true, avoiding the consequences of bar discipline would also constitute a strong incentive for him to sign the declaration and perform the Settlement Agreement. Of course, as the parties agreed in their settlement, the information about Wank's transgressions as a California attorney would be held in confidence unless he filed a bankruptcy petition. We are also uncomfortable with this strategy, adding to our reluctance to endorse the "facts" recited in the First Declaration via a summary judgment.

-20-

bankruptcy court pause before adopting the First Declaration as the sole basis for determining the material facts in this action.

We acknowledge that the bankruptcy court attempted to clarify that it would not consider the bankruptcy-defeating provisions of the Settlement Agreement and the First Declaration, and would rely solely on the factual matters addressed in Wank's declaration:

> THE COURT: The fact that there was a stipulation that it would not be dischargeable in bankruptcy is to be excised out of the declaration and is — cannot be considered and is not the law. Therefore, I've only considered actual statements and whether or not there's a reasonable disputed facts as to the statements made.

Hr'g Tr.19:4-9, December 19, 2012. However, in this statement, the court incorrectly described the provenance of the First Declaration. The First Declaration was never part of the stipulated judgment. The First Declaration was attached to the Settlement Agreement, and sealed by the parties and deposited with an escrow company, only to be opened if Wank filed a bankruptcy petition, then to be submitted to the bankruptcy court. As discussed above, in our view, the First Declaration does not fall under the exception to prohibition of waivers articulated in In re Cole, where a court may sever from a stipulation for judgment a bankruptcy-defeating clause, while giving effect to the other facts included in the stipulated judgment. 226 B.R. at 655. By its terms, the First Declaration was a standalone document that was sealed by the parties and only to be used in the event of a bankruptcy filing to provide grounds for an exception to discharge.

All things considered, we think the First Declaration falls within the public policy prohibition on waivers of bankruptcy

-21-

protection articulated in In re Huang.  The bankruptcy court, under these unique circumstances, should not have relied exclusively on Wank's statements in the First Declaration in awarding the Appellees a summary judgment.

**II.**

**The bankruptcy court made credibility determinations, weighed evidence and drew inferences in favor of the moving party, which are inappropriate in considering a motion for summary judgment.**

Even assuming the bankruptcy court's reliance upon the First Declaration in granting summary judgment to the Appellees did not transgress the public policy against enforcing prepetition agreements to waive bankruptcy protections, the court's decision must nonetheless be vacated.

It is a basic tenet that "'[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts' are inappropriate at the summary judgment stage." Oswalt v. Resolute Indus., 642 F.3d 856, 861 (9th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986)).  Contrary to this admonition, an analysis of the bankruptcy court's ruling demonstrates that it necessarily made credibility findings, weighed Wank's various sworn statements, and drew inferences in favor of the Appellees in granting them a summary judgment.

It is important to note that the bankruptcy court did not strike the Second Declaration as a "sham," nor otherwise discount it as patently unreliable.[18]  Indeed, we agree that the Second

---

[18]  In Yeager v. Bowlin, 693 F.3d 1076, 1081 (9th Cir. 2012),
(continued...)

-22-

Declaration was properly before the court for its consideration in resolving the summary judgment motion. We disagree with the court, however, that it was free to credit the contents of the First Declaration when the Second Declaration clearly called those statements into question.

In its Tentative Ruling, the bankruptcy court explained,

> In the [First] Declaration, [Wank] admits that he agreed to act as a primary investor to invest [Appellees'] monies, that the funds were wired to the EIS, that the EIS was a fraud, that [Wank] advised [the Appellees] that EIS would have an exit buyer in place, but that there was no such exit buyer, that he made representations to Plaintiffs which were false, to induce them to place their funds in his trust account and to permit him to act as [Appellees'] primary investor. These stipulated facts[19] are probative and credible evidence of fraud and conversion.

Tentative Ruling at 6.

Then, at the hearing, the bankruptcy court continued,

> The statements that are disputed or the additional statements [in the Second Declaration] do not dispute the key statements made. They simply try to explain

---

[18](...continued)
the Ninth Circuit examined the "sham affidavit" rule, which allows a trial court to make a credibility determination on summary judgment by rejecting a second sworn statement from a witness that conflicts with his or her earlier deposition testimony. The rationale for the rule is that depositions are adversarial in nature where the witness is subject to examination and cross-examination and, therefore, deposition testimony may be deemed inherently more reliable than self-serving affidavits. Id.; Darnell v. Target Stores, 16 F.3d 174, 179 (7th Cir. 1994). However, the Yeager court noted that the sham affidavit rule must be applied with caution, because evaluating two conflicting statements from the same party necessarily involves determining credibility, and "the [trial] court is not to make credibility determinations when making or denying summary judgment." Yeager, 693 F.3d at 1080. Of course, this appeal presents a conflict between Wank's two declarations, not a deposition, so the sham affidavit exception to the prohibition on credibility determinations in summary judgment does not apply.

[19] Again, these were not "stipulated facts"; they were Wank's statements in the First Declaration.

-23-

them away or rationalize them. But the statements that go to the fact that false statements were made, they were made, according to paragraph four, to induce the [Appellees] to place funds in Mr. Wank's account, and that there were communications made, and that there was an intent for them to rely on those statements because they were made to induce them, and the fact that there was fraud really have not been disputed with a careful reading of the subsequent declarations. They're sort of explained further, and they're supplemented, and they're rationalized, but they're just not materially disputed.

Hr'g Tr. 19:18-20:7.

As can be seen, in evaluating Wank's statements in the First Declaration, the bankruptcy court made a credibility determination. Indeed, the bankruptcy court describes Wank's statements in the First Declaration as constituting "credible evidence." To measure the value of the statements in the First Declaration against Wank's statements in the Second Declaration required the bankruptcy court to assign them weight. This cannot be done in the context of summary judgment. Dominquez-Curry v. Nevada Transp. Dep't, 424 F.3d 1027, 1036 (9th Cir. 2005) (At summary judgment, "the judge does not weigh disputed evidence with respect to a disputed material fact. Nor does the judge make credibility determinations with respect to statements made in affidavits, answers to interrogatories, admissions, or depositions."); SEC v. M&A W., Inc., 538 F.3d 1043, 1054-55 (9th Cir. 2008) ("This Court, and others, have long recognized that summary judgment is singularly inappropriate where credibility is at issue. Only after an evidentiary hearing or a full trial can these credibility issues be appropriately resolved . . . . The district court's assessment of [] credibility may ultimately be correct, but such an assessment may only be made after a full evidentiary hearing, and is inappropriate at the summary judgment

-24-

stage.") (citations and internal quotation marks omitted). While the bankruptcy court characterized Wank's statements in the Second Declaration as explaining away, supplementing or rationalizing the statements he made in the First Declaration, in doing so, the court was necessarily required to weigh the value of those later statements, to credit some of them, and to reject others. This process was not appropriate without a trial.

Moreover, we disagree with the bankruptcy court's characterization of the statements in Wank's Second Declaration as merely explaining or rationalizing the statements in the First Declaration. As to key elements of exception to discharge under § 523(a)(2)(A), the Second Declaration flatly contradicts, not explains or rationalizes, the statements in the First Declaration.

For example, the Appellees were required to prove that Wank made representations to them. In the Second Declaration, Wank flatly denies that he made any representations to the Appellees. Second Declaration at ¶ 4. Instead, Wank reminds the court that his "representations" were made via the EIS Agreements, documents which were not submitted to the bankruptcy court. Wank's denial that he made "statements" to the Appellees therefore raises an issue of material fact sufficient to require a trial.

In addition, neither of Wank's declarations contain an admission that he knew that the representations he made to the Appellees were false when he made them, another element for a § 523(a)(2)(A) fraud exception to discharge. Wank acknowledges he knew that the Appellees' funds were potentially at risk at the time he signed the EIS Agreements and transferred the funds. However, the bankruptcy court then inferred knowledge of the

-25-

falsity of his representations at the time they were made from Wank's admission in the Second Declaration that, at a later date, he came to know the representations were false. Drawing such an inference against Wank and in favor of the Appellees was inappropriate in this context of a summary judgment motion.

The Appellees were also required to prove that Wank intended to deceive Appellees. To satisfy this requirement, the bankruptcy court relied on Wank's statement in the First Declaration, but apparently discounted his statement in the Second Declaration that not only did he not intend to deceive the Appellees by facilitating their investments, that he in fact invested $25,000 of his own money in the venture. Again, the conflicting statements raise a trial issue of material fact as to Wank's intention to deceive.

In sum, while there were obviously aspects of Wank's First Declaration that tended to establish that he intentionally induced the Appellees to invest in a risky scheme, whether he committed the sort of knowing fraud contemplated in § 523(a)(2)(A) was called into legitimate question by the contents of the Second Declaration. Since Wank's two competing statements were the only factual record the bankruptcy court could consider, in granting a summary judgment to the Appellees, it assigned weight to his various admissions and statements, and drew inferences against Wank from those statements. This was error.

//
//
//
//

**III.**

**The Appellees did not establish that they justifiably relied on on Wank's representations.**

Even if the First Declaration could be used against Wank, and even if the bankruptcy court did not inappropriately weight the evidence in the record, there remained a glaring hole in the Appellees' proof that compels us to vacate the summary judgment.

In considering a request for an exception to discharge under § 523(a)(2)(A),

> [A] creditor must prove justifiable reliance upon the representations of the debtor. In determining that issue, the court must look to all of the circumstances surrounding the particular transaction, and must particularly consider the subjective effect of those circumstances upon the creditor.

In re Kirsh, 973 F.2d 1454, 1460 (9th Cir. 1992); see also Citibank (S.D.) N.A. v. Eashai (In re Eashai), 87 F.3d 1082, 1090 (9th Cir. 1996) (noting that whether a creditor's reliance on a debtor's representations is justified requires the application of a subjective standard.)  As the Supreme Court explained this standard, "[j]ustification is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case . . . ."  Field v. Mans, 516 U.S. 59, 71 (1995), citing the Restatement (Second) of Torts § 545A, comment b. (1976).

In this case, to be entitled to an exception from discharge under § 523(a)(2)(A), each of the Appellees must show that they, individually, were justified in relying on any false representations made to them by Wank.  In his arguments to the bankruptcy court that there were disputed material facts regarding

-27-

whether the Appellees each justifiably relied on his alleged false statements, Wank repeatedly insisted that "[Appellees] had already made up their minds to invest in the EIS, and, therefore did not rely on his statements." Second Declaration at 9. Instead of relying upon his statements, Wank argued that the Appellees had each arrived at their decision to invest after speaking with Neidich, and after conducting their own chosen due diligence. Id.

Wank's uncontradicted statements about the Appellees' lack of reliance depict a plausible scenario which finds other support in the parties' submissions. For example, the Appellees attached as an exhibit to their Motion for Summary Judgment a certified copy of the First Amended Complaint they filed in the State Court Action. Although the Appellees never discussed in the bankruptcy court whether they justifiably relied (or relied at all, for that matter) on Wank's representations, they alleged in the state court complaint that (1) Neidich made the first contact with Sidiqqi "by telephone and extolled the virtues of the [EIS]." ¶ 24; (2) Neidich and Romer had a meeting with Ferguson in June of 2004 in which they "extolled the virtues of the [EIS], which Defendants Neidich and Romer claimed, among other things, paid its investors 8% per month, which purported to yield returns of 155% per year, or words to that effect." ¶ 25; (3) in March 2004, Neidich and Romer sent Gordon "an email or emails in which they extolled the virtues of the [EIS]. They also made the same representations regarding an 8% monthly yield and 155% annual yield on the investment." ¶ 26(a); (4) In early 2004, Neidich "solicited Mr. Tsoupakis's investment in the [EIS], which he claimed paid extraordinarily high rates of return." ¶ 27; and (5) in September

-28-

2004, Neidich contacted A&S Investment and "extolled the virtues of the [EIS]." ¶ 28.[20] Collectively, these allegations in the Appellees' state court complaint tend to show that they each were first contacted by either Neidich or Romer, not Wank, and that Neidich and/or Rohmer made glowing and unfounded representations to them concerning the EIS. In short, Appellees' own pleading in state court plausibly support Wank's contention that: "Plaintiffs had already made up their minds to invest in the EIS, and, therefore did not rely on his statements." And as Wank observes, the Appellees have submitted no declarations, nor any documentary evidence (such as the EIS Agreements that they admit they signed in connection with their investments) to show their justifiable reliance on his representations.

Moreover, even if they did actually rely upon Wank's statements in investing in the EIS, each of the Appellees must establish that it was justifiable for them to do so, based upon their background, training and experience as investors. The record contains no facts to demonstrate that, assuming they in fact took his word, they lacked other reasons not to appreciate the risks associated with the currency investment. As Wank points out, whether the Appellees could show justifiable reliance was in doubt because at least some of them were arguably sophisticated, educated investors: a mortgage banker, a CPA, an insurance broker, a Porsche dealer, and a medical doctor.

---

[20] At oral argument before the Panel, counsel for the Appellees was invited to explain whether the Appellees may have relied on the representations of Neidich and Romer, which they entered into the bankruptcy court's record, rather than the alleged representations of Wank. Counsel simply stated, "They relied on Wank."

-29-

At best, whether the Appellees each justifiably relied on Wank's representations was disputed; at worst, the record contains no evidence to show such reliance. Because of this, the bankruptcy court erred by determining that the debt Wank owed to Appellees was excepted from discharge under § 523(a)(2)(A).

**CONCLUSION**

In granting summary judgment to the Appellees, the bankruptcy court should not have relied solely upon a declaration expressly designed to defeat Wank's ability to obtain effective relief under the bankruptcy laws. In light of a contradictory declaration, the bankruptcy court should not have weighed the value of his various statements, determined Wank's credibility, or drawn inferences in favor of the Appellees. Finally, there was nothing in the record to show that the Appellees justifiably relied upon any of Wank's alleged false representations in making their investments. Because genuine issues of material fact remain requiring a trial, we VACATE the bankruptcy court's summary judgment and REMAND this matter for further proceedings.

Ballinger Jr., Bankruptcy Judge, concurring:

I agree that the bankruptcy court's ruling in this case must be reversed, but not for the reasons announced by the majority. Reversal is warranted only because the bankruptcy court failed to justify its decision to disregard Wank's sworn disavowal of the First Declaration and, therefore, improperly weighed the evidence when considering plaintiffs' request for summary judgment. Had

the bankruptcy court found Wank's Second Declaration the self-serving product of a shammer, I would vote to affirm. I respectfully disagree with the panel that the First Declaration, coupled with undisputed material facts, did not establish all the elements requisite to granting relief under Bankruptcy Code section 523(a)(2)(A).

A bankruptcy court has the power to disregard sworn avowals meant to defeat summary judgment if it finds them to be conclusory, self-serving or to constitute a sham. See F.T.C. v. Pub. Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997) (conclusory and self-serving affidavits lacking detailed facts and any supporting evidence are insufficient to create a genuine issue of material fact); Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 267 (9th Cir. 1991) (to disregard an affidavit as one conjured to avoid summary judgment, the district court must make a factual finding that the contradiction was a sham).

In this case, Wank's Second Declaration is clearly self-serving, but not conclusory.[1] Instead of declaring Wank's more recent declaration a sham not to be considered, the bankruptcy court reviewed the Second Declaration and essentially balanced its credibility against the admitted facts contained in the First Declaration. Statements in the Second Declaration contradicted facts essential to plaintiffs' case and created genuine disputes regarding material issues. These disputed issues preclude granting summary disposition and compel us to reverse the bankruptcy

---

[1] The Second Declaration is ten pages long and contains details of Wank's version of the circumstances surrounding creation of each paragraph of the First Declaration.

-31-

court's order. But, I respectfully disagree that this result flows from any inherent unreliability with Wank's initial sworn admissions or a public policy concern. I believe there was evidence at the trial court supporting a finding that Wank's debt to plaintiffs should be excepted from his bankruptcy discharge. Section 523(a)(2)(A) excepts from discharge any debt for money, property or credit obtained by false pretenses, false representations or actual fraud. To obtain relief a creditor must establish five elements: 1) the debtor made a representation; 2) the debtor knew at the time the representation was false; 3) the representation was made with the intent and purpose of deceiving the creditor; 4) the creditor justifiably relied on the representation; and 5) the creditor was damaged as a proximate cause of the representation. Ghomeshi v. Sabban (In re Sabban), 600 F.3d 1219, 1222 (9th Cir. 2010); Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000).

In this case, the last element is not disputed; Wank acknowledges that plaintiffs suffered substantial damage as a result of the scheme in which he encouraged them to invest. And the First Declaration, standing alone, provides sufficient evidence that a court could conclude satisfies a number of the other elements of section 523(a)(2)(A). The majority disagrees and finds the First Declaration inherently unreliable. It also concludes the bankruptcy court erred because the record shows plaintiffs did not establish justifiable reliance. With respect to the reliability of admissions found in the First Declaration, the majority discusses the long recognized public policy

-32-

prohibition against prepetition waivers of Bankruptcy Code discharge rights and finds that this policy dictates that Wank's admissions in the First Declaration be viewed with great skepticism.

I disagree that this policy consideration is relevant to this case.[2] As the panel notes, the bankruptcy judge correctly ruled that she would not consider the "bankruptcy defeating" language found both in the First Declaration and the agreement settling the parties' state court case. The question here is whether the bankruptcy judge incorrectly found that sworn admissions contained in the First (and disavowed in the Second) Declaration established

---

[2] There is no dispute that the First Declaration contains an improper "bankruptcy-proofing" provision. The bankruptcy court properly held that this term was void and would not be considered. But, case law clearly provides that the bankruptcy court can consider underlying facts contained in materials that include a bankruptcy defeating clause. Hayhoe v. Cole (In re Cole), 226 B.R. 647, 651 (9th Cir. BAP 1998), citing Klingman v. Levinson, 831 F.2d 1292, 1296 n.3 (7th Cir. 1987). The majority acknowledged, citing Cole, that the Bankruptcy Appellate Panel has drawn a distinction between the public policy against de facto bankruptcy discharge waivers and determinations or stipulations regarding facts that may be relevant to determining if a debt is dischargeable. In Cole, the bankruptcy court ignored a bankruptcy defeating clause contained in a state court judgment, but considered stipulated facts contained therein to determine if collateral estoppel applied. The majority points out that there are no stipulated facts and judgment in this case. But, Cole and Levinson do not require that the underlying facts be stipulated to, nor do those cases require the facts be taken from a judgment. Here, we have admitted facts in a declaration signed under penalty of perjury. Whether the facts were stipulated to or are a single party admission, and whether they were contained in a judgment or a declaration, should make no difference to a bankruptcy court tasked with determining if those facts support a claim of non-dischargeability for purposes of summary judgment. The majority's conclusion that the public policy against bankruptcy defeating clauses creates a general skepticism of the admitted facts goes too far. Cole and Levinson simply allow the court to disregard the improper language and examine, without a presumption of suspicion, the underlying facts.

-33-

elements justifying relief under section 523(a)(2)(A). Reversal is required not because the bankruptcy judge could not give credence to the First Declaration's admissions, but rather because the record lacks a factual finding that the judge deemed the factual contradictions in the Second Declaration unworthy of consideration. Had the bankruptcy court found the Second Declaration a sham, no public policy concern would have prevented it from holding that the admissions contained in the First Declaration conclusively established the following three elements required for relief under section 523(a)(2)(A):

- That Wank made false representations to plaintiffs to convince them to transfer hundreds of thousands of dollars to him;

- That Wank was aware that most, if not all, of the relevant representations were false when he made them; and

- That the false representations constituted deceit. Wank made them to create false impressions in plaintiffs' minds (e.g. that Wank had expertise in the financial scheme they were to invest in and that their money would never be put at risk of loss).

The majority also rests its decision on the belief that plaintiffs failed to establish the justifiable reliance needed to obtain a judgment because the Second Declaration contains Wank's assertions that plaintiffs had already decided to invest in the EIS currency speculation scheme prior to meeting with him. This conclusion supports the view that if the bankruptcy judge had memorialized her belief that the Second Declaration was contrived and bogus, the decision at the trial court would have to be affirmed. More important are Wank's sworn acknowledgments in the First Declaration that he made representations to the Plaintiffs that were false to induce

-34-

them to place their funds in his trust account, permit him to act as their "primary investor" and transfer their money to EIS. Coupled with the undisputed fact that subsequent to these representations plaintiffs provided large sums to Wank, the bankruptcy court could appropriately decide that plaintiffs established justifiable reliance.

Although I respectfully disagree with the majority's reasoning, I concur in the decision to set aside the bankruptcy court's grant of summary judgment.