NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL
OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No. SC-17-1194-LBF |
| | ) | |
| PAUL Y. JOHNSON and CELESTE C. JOHNSON, | ) | Bk. No. 3:16-bk-05753-LT |
| | ) | |
| | ) | Adv. No. 3:16-ap-90186-LT |
| Debtors. | ) | |
| _____ | ) | |
| | ) | |
| PAUL Y. JOHNSON; CELESTE C. JOHNSON, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | **M E M O R A N D U M**[*] |
| | ) | |
| W3 INVESTMENT PARTNERS, LP, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Submitted Without Argument on March 22, 2018
at Pasadena, California

Filed - April 16, 2018

Appeal from the United States Bankruptcy Court
for the Southern District of California

Honorable Laura S. Taylor, Chief Bankruptcy Judge, Presiding

_____

Appearances: Kennan E. Kaeder on brief for Appellants; Paul J. Delmore and Daniel W. Towson of Simpson Delmore Greene LLP on brief for Appellee.

_____

Before: LAFFERTY, BRAND, and FARIS, Bankruptcy Judges.

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

The bankruptcy court granted summary judgment to Appellee on its nondischargeability claim under § 523(a)(2)(A).[1] In so doing, the court gave issue preclusive effect to a prepetition stipulated judgment entered in state court as part of a litigation settlement. That judgment deemed admitted the facts alleged in the state court complaint, which included allegations supporting a finding of fraud.

Appellants' primary argument is that the bankruptcy court erred in applying issue preclusion to the stipulated judgment because it amounted to an unenforceable prepetition waiver of the discharge. We disagree, and for the reasons set forth below, we AFFIRM.

**FACTS**

**A.    The State Court Litigation**

Appellants Paul and Celeste Johnson were the principals of Cel J, Inc. Cel J was the general partner of Sushi on the Rock Carlsbad, L.P., which operated a restaurant in Carlsbad, California. Appellee W3 Investment Partners, LP, was a limited partner in Sushi on the Rock, having provided a capital contribution of $575,000. Paragraph VI of the Agreement of Limited Partnership executed by the partners in September 2004 provided that Cel J would be paid a management fee of $7,000 per month and that, once the partnership's operating reserves reached $100,000, the limited partners would receive any excess as

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

capital reimbursement and cash distributions in proportion to their investments in the partnership.

In 2006, W3 sued Cel J and the Johnsons (collectively, "Defendants") in San Diego County Superior Court, pleading thirteen causes of action including breach of contract, breach of fiduciary duty, conversion, and three fraud causes of action: intentional misrepresentation, concealment, and false promise. In its first amended state court complaint ("FAC"), W3 alleged that from 2004 to 2006 Defendants (i) intentionally diverted Sushi on the Rock's revenues and spent the partnership funds for their personal benefit; (ii) intentionally produced inaccurate and misleading financial statements; and (iii) purposefully failed to make required distributions to the limited partners. With respect to the Eighth Cause of Action for Fraud - Intentional Misrepresentation, W3 alleged:

74. Pursuant to the Agreement between W3 and CEL J, CEL J represented to W3 that CEL J is required to make certain deposits to the Operating Reserve Account and cause distributions to be made to W3, as described in paragraphs 15(a) - (d). It was further represented to W3 that CEL J would have responsibility for the safekeeping and use of all Sushi on the Rock assets and funds and that it would not use these assets and funds in any manner except for the exclusive benefit of the Sushi on the Rock.

75. The representations made to W3 that the required deposits would be made to the Operating Reserve Account, distributions would be made to W3 and that Sushi on the Rock assets and funds would be used exclusively for the benefit of the partnership were all entirely false. Instead, Sushi on the Rock assets and funds were and are being fraudulently used by CEL J, CELESE and P. JOHNSON for their own personal benefit and enjoyment, as evidenced by the fraudulent withdrawals, expenses and transfers described above in paragraphs 16 through 29.

76. At the time that the representations were made, CEL J, C. JOHNSON and P. JOHNSON knew they were

-3-

false and/or made the representations recklessly and without regard for their truth.

77. CEL J, C. JOHNSON and P. JOHNSON intended that W3 rely on these representations in making their Capital Contribution to Sushi on the Rock and intended that W3 rely on these representations after Sushi on the Rock was operational.

78. W3 did, in fact, reasonably rely on the above representations in that it would not have executed the Agreement if it had known that deposits would not be made into the Operating Reserve Account, distributions would not be made to W3 and that Sushi on the Rock assets and funds would not be used exclusively for the benefit of the Sushi on the Rock, but rather for the personal benefit of CEL J, C. JOHNSON and P. JOHNSON.

79. As a direct and proximate result of the aforementioned acts of CEL J, C. JOHNSON and P. JOHNSON, it is herein alleged that W3 has been damaged in an amount to be proven at trial and has incurred and continues to incur costs and expenses including, but not limited to, consequential damages, litigation costs and reasonable attorneys' fees as provided under the Agreement.

Similar allegations supported the Ninth Cause of Action for Fraud - Concealment:

82. CEL J, C. JOHNSON and P. JOHNSON intentionally failed to disclose to W3 that they would not make the required deposits into the Operating Reserve Account, would not cause required distributions to be made to W3, as described in paragraphs 15(a) - (d) and that they intended to use Sushi on the Rock assets and funds for their own personal benefit and not for the exclusive benefit of Sushi on the Rock, as described above in paragraphs 16 through 29.

83. W3 was unaware of the fact that CEL J, C. JOHNSON and P. JOHNSON intended not make [sic] the required deposits into the Operating Reserve Account, would not cause required distributions to be made to W3, as described in paragraphs 15(a) - (d) and that they intended to use Sushi on the Rock assets and funds for their own personal benefit and not for the exclusive benefit of Sushi on the Rock, as described above in paragraphs 16 through 29. This deception was reasonably relied on by W3.

84. CEL J, C. JOHNSON and P. JOHNSON intended to deceive W3 by concealing the above facts in order to

-4-

cause W3 to make a Capital Contribution to Sushi on the Rock and to continue its participation in Sushi on the Rock after it became profitable.

W3 also alleged a Tenth Cause of Action for Fraud - False Promise, relying on allegations almost identical to those supporting the Ninth Cause of Action for Fraud - Concealment.

After litigating the matter for nearly two and a half years, the parties, represented by counsel, reached a settlement whereby Defendants agreed to pay W3 $625,000. The settlement agreement ("Settlement Agreement") required Defendants to pay at least $2,000 per month for five years; the remaining amount was to be paid in eighteen equal monthly installments of approximately $28,000 each. In Paragraph I.B. of the Settlement Agreement, the Johnsons denied any liability to W3. At the same time, Paragraph III.2., which required the Johnsons to each personally guarantee the obligations of Defendants under the agreement, provided that the Johnsons "have further expressly agreed to and understand that all such obligations under the Agreement and the Stipulated Judgment shall be fully and entirely nondischargeable and shall survive any liquidation proceeding, receivership proceeding, conservatorship proceeding, bankruptcy proceeding and/or any other similar proceeding."

Defendants (and their counsel) also executed a stipulated judgment ("Stipulated Judgment") that was to be entered if they breached the Settlement Agreement, and the Johnsons each executed personal guarantees of the amounts due under the settlement. The Stipulated Judgment provided, in relevant part:

> 3. Cel J. Inc., Celeste Johnson and Paul Johnson expressly agree, acknowledge and stipulate that the filing and/or entry of this stipulated judgment deems

-5-

all allegations, statements and facts contained in the first-amended complaint to be true and accurate.

4. Cel J., Inc, Celeste Johnson and Paul Johnson expressly agree, acknowledge and stipulate that this stipulated judgment is directly related to and arises solely out of their fraudulent conduct, including their breaches of fiduciary duty, as specifically alleged in the first-amended complaint.

At a hearing before the settlement judge on April 23, 2008, the settlement terms were put on the record. Those terms included that the amounts due under the personal guarantees would not be dischargeable in bankruptcy and that in the event of a default a stipulated judgment could be entered. Debtors indicated at that hearing that they understood the terms of the settlement and were willing to be bound by its terms.

Defendants made payments under the Settlement Agreement for five years but thereafter defaulted. As a result, W3 sought entry of the Stipulated Judgment in state court. For reasons that were never fully explained, the state court did not enter the Stipulated Judgment but rather a form judgment in the principal amount of $516,000 (the "Form Judgment"). The Form Judgment included the following language: "Defendants have stipulated/ agreed that his [sic] judgment: (i) deems the first-amended complaint true and accurate; and (ii) it arises solely out of their fraudulent conduct, including breaches of fiduciary duties."

**B.   The Nondischargeability Proceeding**

The Johnsons filed a chapter 7 petition on September 20, 2016, listing the judgment in favor of W3 on Schedule F in the amount of $558,147. W3 filed a timely adversary proceeding seeking to except its claim from discharge under §§ 523(a)(2)(a),

(a)(4), and (a)(6). In May 2017, W3 filed a motion seeking summary judgment on its claims under §§ 523(a)(2)(A) and (a)(4) only, based on the issue preclusive effect of the state court judgment.

Debtors opposed the motion. They pointed out that the state court entered the Form Judgment, not the Stipulated Judgment. They also argued that the stipulation of nondischargeability of the amounts due under the settlement was void as against public policy and that the fraud issues were not actually litigated, pointing out that the Settlement Agreement itself contained neither any admission of liability nor any facts supporting a fraud finding. In support of their opposition, Debtors submitted declarations from Mr. and Ms. Johnson. Ms. Johnson testified that neither she nor her husband had done anything alleged in the complaint. She stated that W3 misunderstood that the Johnsons had taken the $7,000 monthly management fee from the partnership in increments as it was able to pay and that she had a ledger of what had been taken for that fee. She further stated that "[t]he idea that myself or Paul entered into the limited partnership with an intent to defraud [W3] is simply absurd. Shawn Nevitt of W3 was a customer in our La Jolla location. He heard about the project and asked Paul if he could invest." Ms. Johnson also pointed out that a receiver appointed during the state court litigation had monitored the partnership and, after three months, had found nothing wrong. She further stated that she felt bullied by the settlement judge into settling the lawsuit because he told her she had no chance of winning, and the Johnsons had no money to keep litigating. Mr. Johnson's declaration essentially

-7-

agreed with everything stated by Ms. Johnson.

At the hearing on summary judgment, W3's counsel stated that he did not know why the state court judge had entered the Form Judgment rather than the Stipulated Judgment because the associate who had handled the matter was no longer with his firm. The bankruptcy court asked W3's counsel to look into the matter and submit a declaration explaining what was submitted to the state court in support of the request to enter the Stipulated Judgment: "whatever documents were put before Judge Prager that formed the basis for his determination that – and I'm using his words – that the judgment arises solely out of their, plural, fraudulent conduct." Thereafter, W3's counsel, Paul Delmore, filed a declaration[2] stating in relevant part:

> [O]n October 18, 2013, we provided Judge Prager with the fully executed Confidential Settlement Agreement, which included as exhibits the First Amended Complaint, the Stipulated Judgment executed by Defendants, and the Guaranty of Obligations and Payments signed by Defendants.
>
> 6. We also included a Judicial Counsel [sic] Judgment form JUD-100 together with a copy of the Stipulated Judgment that Defendants executed as part of the settlement. . . . [T]he Judicial Counsel [sic] Judgment form mistakenly did not reference or incorporate the Stipulated Judgment signed by Defendants. Hence, when the Superior Court Clerk filed the Judgment form signed by Judge Prager on October 29, 2013, the Clerk did not include the Stipulated Judgment signed by Defendants as part of the entered judgment.

The bankruptcy court denied the motion as to the § 523(a)(4) claim but granted it as to the § 523(a)(2)(A) claim, finding that issue preclusion applied to the facts stipulated to by the

---

[2]Debtors erroneously stated in their opening brief that W3 did not provide the requested declaration.

-8-

Johnsons, and those facts supported a finding of nondischargeability under § 523(a)(2)(A).[3]

The Johnsons timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in granting summary judgment to W3 by giving issue preclusive effect to the state court judgment as to the § 523(a)(2)(A) nondischargeability claim.

## STANDARDS OF REVIEW

We review de novo the bankruptcy court's decision to grant summary judgment. Plyam v. Precision Dev., LLC (In re Plyam), 530 B.R. 456, 461 (9th Cir. BAP 2015). We also review de novo the bankruptcy court's determination that issue preclusion was available. Id. If issue preclusion was available, we review the bankruptcy court's application of issue preclusion for an abuse of discretion. Id. A bankruptcy court abuses its discretion if it applies the wrong legal standard, misapplies the correct legal standard, or if its factual findings are illogical, implausible, or without support in inferences that may be drawn from the facts in the record. TrafficSchool.com, Inc. v. Edriver Inc., 653 F.3d

---

[3]On June 28, 2017, W3 filed a first amended complaint to eliminate the § 523(a)(4) and (a)(6) claims; accordingly, the bankruptcy court's order granting summary judgment on the § 523(a)(2)(A) claim is final.

-9-

820, 832 (9th Cir. 2011) (citing United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc)).

**DISCUSSION**

**A.  Summary Judgment Standard**

Summary judgment may be granted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  Civil Rule 56(a), incorporated via Rule 7056; Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 707 (9th Cir. 2008).  The trial court may not weigh evidence in resolving such motions, but rather determines only whether a material factual dispute remains for trial.  Covey v. Hollydale Mobilehome Estates, 116 F.3d 830, 834 (9th Cir. 1997), opinion amended on denial of rehr'g, 125 F.3d 1281 (Mem.).  A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party, and a fact is "material" if it might affect the outcome of the case.  Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 992 (9th Cir. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986)).  The initial burden of showing there is no genuine issue of material fact rests on the moving party.  Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998).

**B.  Issue Preclusion**

In applying issue preclusion to a state court judgment, the bankruptcy court must apply the forum state's law of issue preclusion.  Harmon v. Kobrin (In re Harmon), 250 F.3d 1240, 1245 (9th Cir. 2001); In re Plyam, 530 B.R at 462.  In California, application of issue preclusion requires that: (1) the issue sought to be precluded from relitigation is identical to that

-10-

decided in a former proceeding; (2) the issue was actually litigated in the former proceeding; (3) the issue was necessarily decided in the former proceeding; (4) the decision in the former proceeding is final and on the merits; and (5) the party against whom preclusion is sought was the same as, or in privity with, the party to the former proceeding. In re Plyam, 530 B.R. at 462 (citing Lucido v. Super. Ct., 51 Cal. 3d 335, 341 (1990)). In addition, California courts apply issue preclusion only if application of the doctrine furthers the public policies underlying the doctrine. In re Harmon, 250 F.3d at 1245. Those policies include "preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation . . . ." Lucido, 51 Cal. 3d at 770-71.

It is undisputed that the issues deemed decided in the state court litigation were identical to those presented in the nondischargeability proceeding, that the parties were identical, and that the state court judgment was final and on the merits. Additionally, the bankruptcy court concluded that Debtors' coercion argument did not raise a public policy challenge to issue preclusion. Debtors do not challenge this conclusion on appeal, except to the extent they argue that the settlement documents constituted an unenforceable waiver of the discharge.

Thus, the only element in dispute in this appeal is the "actually litigated" requirement (and, by implication, the

-11-

"necessarily decided" requirement).[4] Ordinarily, stipulated judgments are not given preclusive effect because the issues were not actually litigated and thus this element could not be satisfied. Berr v. FDIC (In re Berr), 172 B.R. 299, 306 (9th Cir. BAP 1994). Where the record or judgment evidences an intent by the parties for a stipulated judgment to be preclusive, however, a court may give effect to that judgment. Id.; see Hayhoe v. Cole (In re Cole), 226 B.R. 647, 655 (9th Cir. BAP 1998) ("[I]f the parties stipulated to the underlying facts that support a finding of nondischargeability, the Stipulated Judgment would then be entitled to collateral estoppel application."). Where a party admits liability in a stipulated judgment, that party may be precluded from relitigating that liability. Cal. State Auto. Ass'n Inter-Ins. Bureau v. Superior Ct., 50 Cal. 3d 658, 664-65 (1990).[5]

Here, Debtors contend that the bankruptcy court should not have given issue preclusive effect to the Form Judgment because it and the other settlement documents constituted an unenforceable prepetition waiver of the discharge. While Debtors are correct that the settlement documents contain language that

[4]If an issue was necessarily decided in a prior proceeding, it was actually litigated, but an issue may be actually litigated without being necessarily decided. In re Harmon, 250 F.3d at 1248 & n.9.

[5]Similarly, under California law, courts may apply issue preclusion to a default judgment so long as the defendant was personally served or had actual knowledge of the litigation, the issue was properly raised and submitted to the court, and the court actually determined the issue. In re Harmon, 250 F.3d at 1246-47.

-12-

could be so construed (Paragraph III.2. of the Settlement Agreement), they also contain language deeming admitted the fraud allegations contained in the FAC (e.g., the Stipulated Judgment and the Form Judgment entered by the state court). The bankruptcy court correctly disregarded the general nondischargeability language but found that the Debtors' deemed admission of the facts establishing fraud liability was entitled to preclusive effect.

### 1. The settlement documents deemed admitted the facts supporting a finding of nondischargeability and thus did not constitute an unenforceable prepetition waiver of discharge.

A prepetition waiver of discharge is unenforceable as against public policy. Bank of China v. Huang (In re Huang), 275 F.3d 1173, 1177 (9th Cir. 2002); In re Cole, 226 B.R. at 654. But a party may stipulate to facts that the bankruptcy court can apply in a nondischargeability action. In re Cole, 226 B.R. at 655 (citing Klingman v. Levinson, 831 F.2d 1292, 1296 n.3 (7th Cir. 1987)). In certain narrow circumstances, however, the bankruptcy court should not give preclusive effect to stipulated facts. See Wank v. Gordon (In re Wank), 505 B.R. 878 (9th Cir. BAP 2014).

In Wank, the parties settled prepetition state court litigation and stipulated that if the agreed-upon sum was not paid timely, a $1.1 million judgment would be entered against the defendant. Id. at 881-82. The judgment provided that the obligations arising from the settlement agreement would be nondischargeable in bankruptcy. Id. at 882. The defendant executed a declaration which stated that its purpose was to

-13-

provide a factual basis to further the intent of the parties to ensure that he could not discharge the debt in bankruptcy. Id. Defendant testified in the declaration that (i) he had made false representations to the creditors to induce them to place funds in his trust account and to permit defendant to act as their primary investor; (ii) he told creditors the investment would be safe and that he was an attorney with expertise in such matters; and (iii) he knew at the time he executed the contracts and accepted the funds that there was a possibility funds could be lost but did not inform creditors. Id. The settlement agreement provided that the declaration would be kept in a sealed envelope by an escrow agent, to be unsealed and submitted to the bankruptcy court in the event defendant defaulted on the settlement and filed bankruptcy. Id. at 882-83.

After the defendant defaulted on the settlement agreement and creditors caused the stipulated judgment to be entered in state court, defendant filed a chapter 7 petition. Id. at 883. Creditors filed an adversary proceeding seeking to except from discharge the amount due under the stipulated judgment. In that proceeding, the defendant filed a second declaration in which he contended that he had signed the first declaration under duress and while he was under the influence of anxiety medication and that he had objected to the statements but had signed the first declaration because the settlement represented a substantial discount from the damages alleged in the lawsuit and permitted him to pay over time. He also stated that he believed his statements could not be enforced against him. Id. at 884.

The bankruptcy court granted creditors' motion for summary

-14-

judgment on the § 523(a)(2)(A) claim, stating that although it had disregarded the general nondischargeability language in the settlement agreement and first declaration, debtor's factual admissions in his first declaration sufficiently supported the § 523(a)(2)(A) claim to warrant summary judgment. Id. at 885-86.

On appeal, the Panel held that, under the unique circumstances of that case, the bankruptcy court erred in giving defendant's statements preclusive effect. This was because the "singular goal" of the first declaration, as set forth in the document itself, was to provide a factual basis to further the intention of the parties to ensure that defendant could not discharge the stipulated judgment in bankruptcy. Id. at 889-90. The Panel thus concluded that:

> the reliability of the factual statements [in the first declaration] are potentially tainted by the [creditors'] motives. The document was solely intended to ensure that Wank could not obtain effective relief in bankruptcy. While, perhaps, some of Wank's factual statements could be trusted, to do so would require the bankruptcy court to weigh the credibility of those statements against the circumstances under which the First Declaration was executed.

Id. at 890.

The Panel also noted that the first declaration was not part of the stipulated judgment, but rather was "a standalone document that was . . . only to be used in the event of a bankruptcy filing to provide grounds for an exception to discharge." Id. at 891.[6] The Panel vacated the judgment and remanded.

---

[6]The Panel also found that the bankruptcy court had impermissibly weighed evidence and made credibility determinations in the summary judgment context and noted that no evidence in the record supported the justifiable reliance element
(continued...)

Debtors contend that this case is analogous to Wank and that their factual admissions were akin to an unenforceable prepetition waiver of bankruptcy protections. The bankruptcy court rejected this contention, finding that Wank was distinguishable. Specifically, the court found that Debtors' stipulation to the facts in the state court complaint was made at the time of settlement and was relied upon by the state court when it entered the judgment, while the declaration in Wank was only to be unsealed and presented if the debtor filed for bankruptcy.

The bankruptcy court found that this case was more akin to Son v. Park, No. C 10-00085 MHP, 2010 WL 4807089 (N.D. Cal. Nov. 19, 2010). In Son, the debtor defaulted on a prepetition litigation settlement and filed a bankruptcy petition. The bankruptcy court lifted the stay to permit the creditor to seek entry of a stipulated judgment per the terms of the settlement. That judgment included fraud findings based on facts admitted by the debtor at the settlement hearing and pursuant to the parties' agreement that the judgment would include a fraud finding. Id. at *2. In the creditor's subsequent nondischargeability action, the bankruptcy court gave issue preclusive effect to the stipulated judgment, finding that it established four of the five elements of a § 523(a)(2)(A) claim. The court held a trial on the fifth element and entered judgment finding the debt nondischargeable. Id. at *3. On appeal, the District Court held

[6](...continued)
of the § 523(a)(2)(A) claim. Id. at 891-95.

-16-

that the bankruptcy court had not erred in applying issue preclusion to the stipulated judgment, nor was the judgment an impermissible prepetition waiver of the discharge, because the debtor had agreed at the settlement hearing that the admission of fraud and findings of fact supporting fraud would be included in the stipulated judgment. Id. at *7.

Debtors argue that, unlike the debtor in Son, they did not stipulate to any liability or facts supporting fraud at the time of settlement. They contend that the bankruptcy court erred when it stated that Debtors' stipulation to the facts in the state court complaint were made **at the time of the settlement** because they did not admit liability at that time. In fact, Debtors explicitly denied liability in the settlement agreement. Debtors also point out that no facts were stipulated to at the settlement conference and that the operative settlement documents (the Settlement Agreement, Stipulated Judgment, and Guarantees) "came later."

The facts of this case do not precisely mirror those presented in Son (or in Wank), but the salient question is whether the circumstances surrounding the settlement or the judgment itself evidence the parties' intent for the Stipulated Judgment to have preclusive effect. In re Berr, 172 B.R. at 306. Those circumstances include stipulating to facts that support a finding of nondischargeability. In re Cole, 226 B.R. at 655.

In paragraph 9 of his declaration in support of W3's motion for summary judgment, W3's counsel testified that the parties intended that the settlement would be nondischargeable in bankruptcy and that W3 had

-17-

specifically negotiated this language with Defendants with the intent that if Defendants breached the Settlement Agreement, the Stipulated Judgment entered against them would clearly set forth a finding of fraud and breach of fiduciary duty. We specifically required these admissions from Defendants so that in the event they proceeded to bankruptcy, the admission of fraudulent conduct would prove to render the judgment non-dischargeable.

Debtors provided no evidence to refute this testimony. Although they testified in their declarations that they felt pressured to settle, they did not testify that they did not understand the terms of the Settlement Agreement or the Stipulated Judgment, which they and their attorney signed as part of the settlement. Those documents evidence their intent for the state court judgment to have preclusive effect.

For these reasons, the bankruptcy court did not err in concluding that the Stipulated Judgment was not an unenforceable prepetition waiver of the discharge but was instead evidence that the Debtors intended the findings incorporated into that judgment to have preclusive effect in any future bankruptcy case. Accordingly, the actually litigated requirement was met. Although the bankruptcy court did not explicitly address the "necessarily decided" requirement, the record reflects that this element was also met. The Form Judgment explicitly states that the judgment arose solely from Debtors' fraudulent conduct as described in the FAC. Accordingly, the bankruptcy court did not err in applying issue preclusion to the state court judgment.

**2. Debtors have not presented any other meritorious argument supporting the conclusion that the bankruptcy court erred in applying issue preclusion to the state court judgment.**

Debtors also argue that the Stipulated Judgment should not

-18-

have been given preclusive effect because that judgment was never entered. Instead, the state court entered the Form Judgment. The Form Judgment, however, contained essentially equivalent language deeming the FAC true and accurate and indicating that the judgment arose solely from Debtors' fraudulent conduct. Moreover, as the bankruptcy court found, and as evidenced by Mr. Delmore's declaration testimony, Debtors' stipulation to the allegations in the FAC was before the state court when it entered the Form Judgment.

Debtors contend that this case is similar to Cole, in which the BAP held that a stipulated judgment was not entitled to preclusive effect because it was based on the occurrence of future events. 226 B.R. at 655. But Cole is factually distinguishable: there, the underlying state court complaint did not allege fraud in connection with the promissory note giving rise to the debt at issue. The stipulated judgment in that case provided that (i) defendant would not list the debt in any bankruptcy petition or request that the debt be discharged, (ii) defendant had the funds to pay the debt and plaintiff relied on that representation in releasing its writ of attachment, (iii) the debt was nondischargeable under § 523(a)(2)(B), (iv) plaintiff would not have released the writ of attachment but for the defendant's representations of nondischargeability; and (v) any attempt by defendant to discharge the debt would be an admission that he obtained the release of the writ of attachment under false pretenses and thus the debt would be nondischargeable under § 523(a)(2)(A). Id. The Panel held that the bankruptcy court did not err in declining to give issue preclusive effect to

-19-

the stipulated judgment because the stipulated facts had nothing to do with the merits of the state court lawsuit and would have had no evidentiary effect in a § 523(a)(2) action. Id. at 656.

Here, in contrast, the factual admissions incorporated into the state court judgment directly relate to the merits of the fraud claim. Accordingly, Debtors' reliance on Cole is misplaced.

**C.   The bankruptcy court did not err in concluding that the deemed admissions supported a finding of nondischargeability under § 523(a)(2)(A).**

Under § 523(a)(2)(A), a debt for money obtained by the debtor under "false pretenses, a false representation, or actual fraud" may be excepted from discharge. Summary judgment is proper in considering an exception to discharge under § 523(a)(2)(A) if the movant is able to show that there is no genuine issue of material fact as to each of the five elements of exception to discharge under that provision: (1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct. Turtle Rock Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1085 (9th Cir. 2000).

Debtors' admissions establish all of the elements of a § 523(a)(2)(A) claim. Those admissions are: (1) Cel J and the Johnsons made representations to W3 that they would make the required deposits into the operating reserve account and that

-20-

funds would be used for the exclusive benefit of the partnership, and failed to disclose that the Johnsons intended to use Sushi on the Rock assets and funds for their own personal benefit (false representation); (2) at the time the representations were made, defendants knew they were false and/or made the representations recklessly and without regard for their truth (knowledge of falsity); (3) Defendants intended to deceive W3 by concealing their intent to not make the required deposits and distributions and intended that W3 rely on their representations in making their capital contribution to Sushi on the Rock (intent to deceive); (4) W3 reasonably relied on the above representations in that it would not have executed the partnership agreement if it had known that the deposits and distributions would not be made and that assets and funds would be used for the personal benefit of Defendants (justifiable reliance);[7] and (5) as a direct and proximate result of the aforementioned acts, W3 has been damaged in an amount to be proven at trial (damage proximately caused by debtor's statement or conduct).

Debtors do not dispute that, once the bankruptcy court concluded that it was appropriate to give preclusive effect to the state court judgment, the relevant allegations of the FAC – which were deemed admitted – established all the elements of a § 523(a)(2)(A) claim.  And we find no error in the bankruptcy court's application of the law to the facts.

_____

[7]Reasonable reliance is a more exacting standard than justifiable reliance; accordingly, a finding of reasonable reliance meets the lower standard of justifiable reliance. Tallant v. Kaufman (In re Tallant), 218 B.R. 58, 69 n.15 (9th Cir. BAP 1998).

-21-

**CONCLUSION**

For the reasons explained above, we AFFIRM the bankruptcy court's grant of W3's motion for summary judgment on its § 523(a)(2)(A) claim.