**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>CHARLES A. HAMM, II,<br>　　　　　　Debtor. | BAP No. CC-20-1049-LSF |
| | Bk. No. 9:18-bk-10785-DS |
| CHARLES A. HAMM, II,<br>　　　　　　Appellant,<br>v.<br>SHANNA BURCAR; JOHN C. BARLOW;<br>NANCY BARLOW,<br>　　　　　　Appellees. | Adv. No. 9:18-ap-01045-DS<br><br>**MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Central District of California
Honorable Deborah J. Saltzman, Bankruptcy Judge, Presiding

Before: LAFFERTY, SPRAKER, and FARIS, Bankruptcy Judges.

## INTRODUCTION

Chapter 7[1] debtor Charles Hamm appeals the bankruptcy court's

---

[*]This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, "Rule" references are to the Federal Rules of Bankruptcy Procedure, and "Civil Rule" references are to the Federal Rules of Civil Procedure.

order granting summary judgment and judgment in favor of appellees. The bankruptcy court denied Debtor's discharge under § 727(a)(4)(A) based on his failure to schedule a real estate referral commission arising from a pre-petition contract; it also declared nondischargeable under § 523(a)(6) an anti-SLAPP judgment entered in favor of appellees and against Debtor shortly before the petition date.

We AFFIRM summary judgment on the § 727(a)(4)(A) claim and VACATE and REMAND summary judgment on the § 523(a)(6) claim.

**FACTUAL BACKGROUND**

**Prepetition Events**

Debtor is a licensed real estate broker. He is also an attorney, having obtained a law degree and passed the California bar exam, but he is not licensed to practice. Debtor and appellee Shanna Burcar were divorced in 2009.

Debtor thereafter filed at least 50 requests for relief in family court relating to custody and child support issues, and seven unsuccessful appeals. Among other things, he alleged that Ms. Burcar was hiding income. Additionally, between November 2016 and February 2017, Debtor filed three lawsuits in federal court alleging civil rights violations arising out of his arrest for nonpayment of child support, naming as defendants Ventura County Department of Child Support Services ("DCS"), California DCS Services, Ventura County Superior Court, two DCS Support Services

attorneys, the then-governor of California, and two family court judges that had ruled against Debtor in the family court case. All of those lawsuits were dismissed; dismissal was affirmed on appeal to the Ninth Circuit Court of Appeals.

In October 2017, Debtor filed a complaint in Ventura County Superior Court against Ms. Burcar and her parents, John and Nancy Barlow (collectively, "Appellees"). The complaint asserted 45 causes of action, consisting of multiple claims for fraud, conspiracy, abuse of process, and intentional infliction of emotional distress based on the filing and serving of responses to motions Debtor filed in family court.

In response, Appellees filed a special motion to strike under California's anti-SLAPP statute, California Code of Civil Procedure § 425.16. The superior court granted the motion and, on May 10, 2018, entered a judgment awarding Appellees attorney's fees and costs of $22,565. The court found that all of Debtor's claims arose from communications in the course of litigation, which are subject to an absolute litigation privilege under California Civil Code § 47(b) and constitute protected activity under the anti-SLAPP statute. Shortly after entry of the anti-SLAPP judgment, Appellees served a notice of levy and writ of execution on an escrow from which Debtor was to be paid a real estate commission of approximately $5,000.

In the meantime, Debtor was involved in helping his clients, Michael

and Jen Easter, purchase real property in a new development on San Leandro Street in Ventura, California. As part of the transaction, Debtor signed a Referral Registration agreement ("Referral Agreement") on April 10, 2018 with the developer/seller, Williams Homes,[2] which entitled him to a referral fee ("Commission") of four percent of the base purchase price upon the close of escrow.

**Post-Petition Events**

On May 21, 2018, Debtor filed a chapter 7 petition. He did not list his interest in the Referral Agreement on his schedules. In June 2018, escrow closed on the San Leandro transaction, and Debtor received $27,116 pursuant to the Referral Agreement, half of which he paid to Mr. Easter pursuant to an oral agreement. Although he amended Schedule A/B in June 2018 and September 2018, he did not disclose receipt of the Commission in those amendments. In July 2018, the chapter 7 trustee filed a Report of No Distribution.

In August 2018, Appellees filed an adversary proceeding seeking to deny Debtor's discharge under § 727(a)(4)(A) and to have the anti-SLAPP judgment declared nondischargeable under § 523(a)(6).[3] Appellees moved

---

[2]The Referral Agreement names WH Ventura 68, LLC, and WH Ventura 95, LLC, as the sellers, but the parties refer to the seller/developer as "Williams Homes."

[3]The captions in the complaint referenced §§ 523(a)(15) and 727(a)(4)(D) as well as § 727(a)(4)(A). But there were no allegations supporting a claim under § 523(a)(15),

(continued...)

4

for summary judgment on their claims. Debtor filed an opposition, arguing that there were disputed issues of material fact regarding his intent with respect to both claims. He also requested that the court permit him to conduct discovery regarding the San Leandro transaction. The same day he filed his opposition, he filed amended schedules A/B and C to disclose the Commission and to claim it exempt. After a hearing, the bankruptcy court granted the motion. Debtor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I) and (J). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Whether the bankruptcy court erred in granting summary judgment to Appellees on their claim under § 727(a)(4)(A).

Whether the bankruptcy court erred in granting summary judgment to Appellees on their claim under § 523(a)(6).

## STANDARD OF REVIEW

We review de novo the bankruptcy court's decision to grant summary judgment. *Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 461 (9th Cir. BAP 2015). "De novo review requires that we consider a

---

[3](...continued)
and the prayer for relief indicated that Appellees sought denial of discharge under "11 USC § 727(a)(4)(A) and/or 727(a)(4)(D)."

5

matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citations omitted).

We must apply the same legal standards that all federal courts are required to apply in considering the propriety of summary judgment. *Marciano v. Fahs (In re Marciano)*, 459 B.R. 27, 35 (9th Cir. BAP 2011), *aff'd*, 708 F.3d 1123 (9th Cir. 2013). Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Wank v. Gordon (In re Wank)*, 505 B.R. 878, 886 (9th Cir. BAP 2014) (citing Civil Rule 56(a), applicable in adversary proceedings by Rule 7056). An issue is genuine if there is enough evidence for a reasonable trier of fact to make a finding in favor of the non-moving party, and an issue is material if it might legally affect the outcome of the case. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

## DISCUSSION

Debtor contends that the bankruptcy court erred in granting summary judgment on Appellees' claims because the court improperly made credibility determinations in making its determinations. With respect to the § 727(a)(4)(A) claim, Debtor argues that his omissions were not material and that he presented sufficient evidence to raise an issue of

6

material fact regarding whether his omission was made with fraudulent intent. He argues with respect to the § 523(a)(6) claim that the bankruptcy court erred in failing to make specific findings regarding the willful and malicious elements of that claim and that, in any event, he did not intend to injure Appellees by filing the state court lawsuit. As discussed below, we are not persuaded that the bankruptcy court erred in granting summary judgment on the § 727(a)(4)(A) claim, but material factual issues remain with respect to the § 523(a)(6) claim.

## A. The bankruptcy court's credibility comments do not constitute reversible error.

In its oral ruling, the bankruptcy court made several comments regarding Debtor's credibility. For example, the court noted that "because [Debtor] is representing himself, what begins as argument often becomes testimony, and the Court's able to assess the Debtor's credibility a little bit more when we have the opportunity to speak in person beyond just reviewing the declarations that the Debtor submitted." In its ruling regarding the § 727(a)(4)(A) claim, the court remarked, "[a]s the fact finder here, I did not find the testimony of the Debtor credible that he believed that this payment did not need to be disclosed." And in its § 523(a)(6) ruling, the court commented,

> I've had an opportunity to view Mr. Hamm, and all of this record demonstrates to me that this Debtor is not credible and that a reasonable fact finder could not conclude that there was a

7

genuine belief on the Debtor's part that he was being directed to file a lawsuit that was ultimately dismissed and the anti-SLAPP ruling that led to the judgment of the attorney fees and costs that are the basis now for the 523 cause of action. There is no genuine dispute of material fact here. This Debtor's arguments are not credible.

Based on these comments and others, Debtor argues that the court improperly made credibility assessments on a motion for summary judgment. *See In re Wank,* 505 B.R. at 891. *See also Anderson,* 477 U.S. at 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.").

We disagree. The record as a whole reflects that the bankruptcy court did not rely on the observational credibility determination that a factfinder would ordinarily make of a trial witness, i.e., one based on demeanor and tone of voice. Rather, the court's comments indicated that it found not credible Debtor's attempt to raise material issues of fact with self-serving, conclusory statements that were contradicted by clear documentary evidence. As the Supreme Court reminds us:

> At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a "genuine" dispute as to those facts. As we have emphasized, when the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some

metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. **When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.**

*Scott v. Harris*, 550 U.S. 372, 380 (2007) (citations, quotations, and alterations omitted) (emphasis added).

Debtor's declarations with respect to the § 727(a)(4)(A) claim asserted an alleged factual dispute, but his allegations were contradicted by other undisputed evidence in the record. For example, in his response to Appellees' request for admission that the San Leandro sales contract was signed pre-petition, Debtor stated he had no personal knowledge of the contract. But emails Debtor himself produced showed that Mr. Easter had sent him a copy of the contract on April 11, 2018 and that Debtor stated he would "take a look now."

Similarly, Debtor asserted in his declaration that he was not acting as an agent for the Easters, but one of the emails attached to that declaration showed that on March 16, 2018, Debtor told Mr. Easter that he had visited the San Leandro property and "filled out a registration form with your

9

names and me as your agent." Debtor also asserted in his declaration that he never received a copy of the Referral Agreement with a developer signature. But an email exchange from April 10, 2018, showed that Debtor asked Amy Rohren of Williams Homes whether her office intended to get the developer to sign the Referral Agreement, and that she responded, "My signature on there will work. Once the contract is generated the Referral Form will go to Corporate. When the home closes the Hamm Team will receive the 4%."

Finally, in his responses to Appellees' requests for admissions, Debtor denied having any personal knowledge of whether escrow had opened on the San Leandro transaction before he filed his bankruptcy petition. But on May 19, 2018, two days before the petition date, Debtor emailed Ms. Rohren to inquire about the closing date and whether an escrow company was handling the transaction. Ms. Rohren replied to Debtor with the name of the escrow company and the escrow officer handling the transaction. On the same date, Debtor and Ms. Rohren also exchanged emails regarding whether the Commission would be paid out of escrow.

Debtor attempts to deflect from these contradictions by arguing that he did not think he was entitled to the Commission until there was a "perfected" contract, i.e., one signed by the developer, Williams Homes, but this argument is entirely implausible in light of the evidence referenced

10

above. Because Debtor's declaratory evidence was contradicted by the record, the bankruptcy court did not err in giving little weight to his declaration testimony. The comments the court made about his presentation at oral argument bolstered the conclusion that the declaration testimony was an attempt to manufacture a factual issue where none existed. The court simply speculated that if Debtor gave the same testimony from the witness stand at trial, no reasonable factfinder would believe it in light of the documentary record, but that observation was not necessary to its ruling.

**B.     The bankruptcy court did not err in granting summary judgment to Appellees on their claim under § 727(a)(4)(A).**

The bankruptcy court may deny a chapter 7 debtor's discharge if "the debtor knowingly and fraudulently, in or in connection with the case-- (A) made a false oath or account[.]" § 727(a)(4)(A). To prevail on a claim under this section, a plaintiff must show, by a preponderance of the evidence, that: "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1197 (9th Cir. 2010) (citations omitted).

Section 541 broadly defines property of the estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." This includes contingent interests. *Neuton v. Danning (In re Neuton)*,

922 F.2d 1379, 1382 (9th Cir. 1990). Although property of the estate does not include an individual debtor's post-petition earnings, § 541(a)(6), "post-petition revenues belong to the estate to the extent they are based on pre-petition services or agreements." *Cusano vs. Klein*, 264 F.3d 936, 945 (9th Cir. 2001) (citations omitted). Accordingly, a commission received by a debtor post-petition where the debtor has "essentially fulfilled all of his obligations for that commission pre-petition . . . will be deemed property of the estate." *Tully v. Taxel (In re Tully),* 202 B.R. 481, 483 (9th Cir. BAP 1996). *See also Rau vs. Ryerson (In re Ryerson),* 739 F.2d 1423, 1425 (9th Cir. 1984) (holding that post-petition proceeds from a contingent pre-petition employment contract were part of the estate). Under these authorities, the bankruptcy court correctly found Debtor's interest in the Referral Agreement needed to be disclosed.

Debtor does not dispute that he failed to list his interest in the Referral Agreement on his original schedules or that he did so knowingly. But he disputes the bankruptcy court's findings that the omission was material and that he acted with fraudulent intent.

"A fact is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property. An omission or misstatement that detrimentally affects administration of the estate is material." *In re Retz*, 606 F.3d at 1198 (citations and quotations

omitted). As evidence of materiality, Appellees submitted the declaration of the chapter 7 trustee, Jerry Namba. Mr. Namba testified that, after adding the Commission to Debtor's scheduled assets of $18,615.08, even after deducting the wild card exemption of $26,925, "[t]here likely **were** assets available for distribution to the Creditors of this Estate. However, Debtor's numerous false oaths prevented me from properly administering this Estate." (Emphasis in original).

Debtor contends that his omission was not material because he was not entitled to the entire Commission given his oral agreement with Mr. Easter to split those funds. He argues that Mr. Namba's declaration erroneously relied on the assumption that he was entitled to the entire $27,116. He also points out that a lawsuit listed in his original schedules as worth $8,000 turned out to be worth nothing. As a result, Debtor argues, his assets were worth less than the wild card exemption and thus there would have been nothing to distribute to creditors.

Even assuming Debtor's assumptions are correct, under the broad definition of materiality quoted above, direct financial prejudice to creditors is not required for the court to find that a false statement or omission is material. *Roberts v. Erhard (In re Roberts)*, 331 B.R. 876, 883 (9th Cir. BAP 2005), *aff'd and remanded*, 241 F. App'x 420 (9th Cir. 2007). The bankruptcy system relies on debtors providing "full, candid, and complete disclosure by debtors of their financial affairs." *Searles v. Riley (In re Searles)*,

13

317 B.R. 368, 378 (9th Cir. BAP 2004). Mr. Namba's declaration establishes that Debtor's omissions prevented him from properly administering the estate. Debtor provided no evidence to the contrary. Thus, the bankruptcy court did not err in finding that omission of the Commission was material.

Debtor next argues that he did not act with fraudulent intent in failing to list his interest in the Referral Agreement and to disclose his receipt of the Commission. He contends that he sincerely believed he did not need to disclose the asset. Debtor testified in his declaration that he never received a copy of the Referral Agreement signed by the developer. He also testified that he was uncertain he would be entitled to the Commission because, under the Referral Agreement, he needed to accompany the Easters on their first visit to the development, which had not yet occurred, and because there were unfulfilled contingencies to the sale. He also denied knowing before the petition date that the purchase agreement had been signed.

But, as discussed above, this testimony is inconsistent with documentary evidence submitted by Appellees and by Debtor himself, which showed that he was informed before he filed his petition that Ms. Rohren's acknowledgment signature was sufficient, that an escrow had been opened, and that he would be paid out of the proceeds of the sale. To the extent Debtor's position is that he did not understand the importance of disclosing contingent assets, that position is contradicted by the fact that he

14

listed on his original schedules the real estate sales commission that had been levied by Appellees, noting that escrow was to close two days post-petition, and he amended his schedules on June 1, 2018 to disclose a fraud claim relating to child support that he apparently intended to prosecute in family court.

Under these circumstances, the bankruptcy court did not err in disregarding Debtor's declaration testimony. *See F.T.C. v. Pub. Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997) (conclusory and self-serving affidavits lacking detailed facts and supporting evidence are insufficient to create a genuine issue of material fact). Even viewing the remaining evidence in the light most favorable to Debtor, the bankruptcy court did not err in finding that Debtor was, at a minimum, recklessly indifferent to the truth, which may support denial of discharge under § 727(a)(4)(A). *Khalil v. Dev. Surety & Indem. Co. (In re Khalil)*, 379 B.R. 163, 174-75 (9th Cir. BAP 2007).

Finally, Debtor argues that the bankruptcy court should have permitted him to conduct discovery on Williams Homes regarding the San Leandro transaction. He notes that Appellees' complaint did not include any reference to that transaction and thus he was deprived of an opportunity to do discovery. But Appellees point out that they served requests for admission regarding the San Leandro transaction in August, September, and October 2018, which would have given him time to serve

15

discovery requests on that issue. In any event, given the other evidence in the record, it is not clear what relevant evidence further discovery would have unearthed.

**C.** **The bankruptcy court erred in granting summary judgment to Appellees on their claim under § 523(a)(6).**

To prevail on a § 523(a)(6) claim, the plaintiff must establish that the debt at issue is "for willful and malicious injury by the debtor to another entity or to the property of another entity." The willful and malicious prongs of the claim must both be established. *Barboza v. New Form, Inc. (In re Barboza)*, 545 F.3d 702, 706 (9th Cir. 2008). A "willful" injury is a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Id.* (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998)). "[T]he willful injury requirement of § 523(a)(6) is met when it is shown either that the debtor had a subjective motive to inflict the injury or that the debtor believed that injury was substantially certain to occur as a result of his conduct." *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1208 (9th Cir. 2001). A malicious injury involves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. *Id.*

Debtor complains that the bankruptcy court failed to make specific findings regarding the elements of the § 523(a)(6) claim and argues that this requires reversal. While the court did not analyze the elements in detail,

16

this does not require reversal, as we could affirm if the record supports the bankruptcy court's ruling. *See Black v. Bonnie Springs Family Ltd. P'ship (In re Black)*, 487 B.R. 202, 211 (9th Cir. BAP 2013). That said, we cannot affirm on this record.

The bankruptcy court's ruling seems to have been based primarily on its rejection of Debtor's argument that when the family court denied his claims at the October 19, 2017 hearing, that court "directed" him to file the action in civil court. The family court stated that Debtor's negligence, intentional misrepresentation, and abuse of authority claims against Ms. Burcar and government agencies were not brought in the proper forum, even though they pertained to child support orders:

> I don't have the authority under the Family Code provision to hear a lawsuit referencing negligence claims or an abuse of authority situation. So that portion of the request for order is going to be denied without prejudice. You will be able to refile that in a proper civil action. Absent you showing me authority to the contrary . . . this Court does not have jurisdiction to hear that.
> . . .
> And so that portion for the request for order is going to be denied without prejudice. You can discuss with whomever or pursue researching how to bring that type of lawsuit against the government or the entity or against Ms. Hamm, but as far as the portion for the child support request for modification, that portion is denied without prejudice to refile in the proper forum.

These comments simply convey that the family court lacked

jurisdiction and thus was not the appropriate venue to bring the asserted claims. The court expressed no opinion as to the merits of the claims, nor did it direct Debtor to do anything. Accordingly, the bankruptcy court did not err in finding Debtor's stated interpretation of the court's comments to be implausible. But this alone did not establish the intent required under § 523(a)(6).

In addition to rejecting the foregoing argument, the bankruptcy court noted that it had considered the entire record in making its ruling. Although the bankruptcy court did not specifically cite Debtor's extensive litigation history arising from his divorce from Ms. Burcar, the record included evidence that after their divorce, Debtor had filed approximately 50 requests for relief in family court, three federal court lawsuits, all of which were dismissed, and seven separate appeals, six of which resulted in affirmance and one of which was abandoned by Debtor. Further, Debtor was sanctioned by the family court at least twice for frivolous filings. This history, and the fact that he asserted 45 causes of action in the superior court complaint, strongly suggest that his intent in filing the superior court lawsuit was to harass Appellees. Additional support is found in the superior court's comment that the complaint initiated "a legal action which was still-born because it is entirely premised on absolutely privileged conduct. Defendants should not have been put to the expense, burden and stress of this action which clearly arises from long, bitter, and utterly

18

unnecessary family court litigation."

Nevertheless, viewing the evidence in the light most favorable to Debtor, the bankruptcy court erred in finding that Appellees had established as a matter of law that Debtor acted willfully and maliciously in filing the superior court lawsuit. While an anti-SLAPP judgment may be nondischargeable under § 523(a)(6), such a finding is appropriate only after analyzing the evidence to determine the plaintiff's intent. *See, e.g., Rose v. Healy (In re Healy)*, No. 10–38019-A-7, 2013 WL 2308472, at *4 (Bankr. E.D. Cal. Mar. 29, 2013), *aff'd sub nom., Healy v. Rose (In re Healy)*, No. EC–13–1200–PaJuKu, 2015 WL 3407237 (9th Cir. BAP May 27, 2015), *aff'd*, No. 15-60044, 689 F. App'x 516 (9th Cir. Apr. 21, 2017) (finding, after trial, that the debtor's filing and prosecution of a state court lawsuit for perjury, which resulted in an anti-SLAPP judgment, was done to annoy and harass the defendant, with debtor's knowledge that the suit lacked merit). The bankruptcy court did no such analysis here. And on that point, although the superior court noted the general animus between the parties, it did not find that Debtor had acted maliciously or that he knew his claims were without merit.

Debtor testified in his declaration that he filed the lawsuit not to injure Appellees but because he believed he could win: he alleged that he had found evidence that Ms. Burcar had understated her income in family court filings and that all three Appellees had cooperated to promote the

fraud through their employment relationship (according to Debtor, the Barlows had employed Ms. Burcar as an independent contractor beginning in 2010). And the record lacks evidence that Debtor knew his claims were barred by the litigation privilege or that he was asserting identical claims in the superior court lawsuit that had been rejected in other proceedings.

As such, Debtor's declaration raised a genuine issue of material fact as to whether he acted willfully and maliciously in filing the state court lawsuit, thus precluding summary judgment on this claim.[4]

## CONCLUSION

The bankruptcy court did not err in granting summary judgment to Appellees on their claim under § 727(a)(4)(a). As for the § 523(a)(6) claim, there was a material factual issue regarding Debtor's intent that precluded summary judgment. Accordingly, we AFFIRM the court's grant of summary judgment on the § 727(a)(4)(A) claim, and VACATE and REMAND summary judgment as to the § 523(a)(6) claim.

---

[4]Debtor analogizes the anti-SLAPP statute to the tort of malicious prosecution and argues that all of the elements of such a claim were not met, but the relevance of this argument is unclear, and in any event, it was not made to the bankruptcy court. Thus we need not consider it. *See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957 (9th Cir. 1989).